UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KELLEY VALE-GUGLIUZZI as personal representative of the ESTATE OF JOSHUA BELLAMY, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 1:17-cv-03432-JMS-DML<br>) |
| JOHN LAYTON in his official capacity as Sheriff of Marion County,<br>JEJUAN WESTMORELAND in his individual and official capacities,<br>CORRECT CARE SOLUTIONS LLC,<br>JENNIFER DEESE in her individual and Official capacities,<br>WILBERT GORDY in his individual and official capacities,<br>FELICIA CLARK in her individual and official capacities,<br>MCDANIELS Deputy, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

# ORDER

This case arises following the suicide of Joshua Bellamy while he was an inmate in the Marion County Jail. Plaintiff Kelley Vale-Gugliuzzi, as representative of Mr. Bellamy's estate, raises multiple claims against a variety of defendants, including Correct Care Solutions LLC ("CCS"). Presently pending before the Court is CCS's Motion for Judgment on the Pleadings. For the reasons described below, the Court denies CCS's Motion.

## I.
### LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)

(quoting Fed. R. Civ. Pro. 8(a)(2)). "Specific facts are not necessary, the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

A motion for judgment on the pleadings brought pursuant to Federal Rule of Civil Procedure 12(c) is governed by the same standard that applies to a motion to dismiss under Rule 12(b)(6). *United States v. Wood,* 925 F.2d 1580, 1581 (7th Cir. 1991). A "court may consider only matters presented in the pleadings and must view the facts in the light most favorable to the nonmoving party." *Nat'l Fid. Life Ins. Co. v. Karaganis*, 811 F. 2d 357, 358 (7th Cir. 1987) (citing *Republic Steel Corp. v. Pennsylvania Eng'g Corp.*, 785 F. 2d 174, 177 n. 2 (7th Cir. 1986)). The Court should "take all well-pleaded allegations in the plaintiffs' pleadings to be true, and [should] view the facts and inferences to be drawn from those allegations in the light most favorable to the plaintiffs." *Republic Steel Corp.*, 785 F. 2d at 177 n. 2. However, "a court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "The documents a court may consider under Rule 12(c) include the complaint, the answer, and any written exhibits attached as exhibits [to either]." *N. Indiana Gun & Outdoor Shows, Inc.* 163 F. 3d at 452, 452 (7th Cir. 1998) (citing Fed R. Civ. P. 10(c)). "A motion for judgment on the pleadings may be granted only if the moving party clearly establishes that no material issue of fact remains to be resolved and that [the moving party] is entitled to judgment as a matter of law." *Karaganis,* 811 F. 2d at 358 (citing *Flora v. Home Fed. Savings & Loan Ass'n*, 685 F. 2d 209, 211 (7th Cir. 1982)).

## II.
### BACKGROUND

The following are the factual allegations in the First Amended Complaint, which, pursuant to the standard described above, the Court must accept as true at this time. In 2015, at least four

inmates under the care and control of the Marion County Sheriff's Department, including Mark Snyder, Dejuan Shepard, Walter Gamble, and Thomas Miles, committed suicide. [Filing No. 36 at 3; Filing No. 36 at 8.] After those suicides, Marion County Sheriff John Layton created a suicide prevention task force, which in 2016 issued recommendations for several procedural changes to reduce the risk of jail suicides. [Filing No. 36 at 3.]

On or about September 24, 2016, Mr. Bellamy was arrested and booked into the Marion County Jail. [Filing No. 36 at 4.] At the time of his arrest, Mr. Bellamy's wife informed the arresting officers that Mr. Bellamy was suffering from the mental and/or physical symptoms of detoxification and withdrawal. Mr. Bellamy exhibited those symptoms while in jail, and another inmate in the Arrestee Processing Center indicated to jail staff that Mr. Bellamy was suffering from them. [Filing No. 36 at 4.]

Defendant CCS is a for-profit company that contracts with the Marion County Sheriff's Office to provide medical care and treatment to inmates in the Marion County Jail. [Filing No. 36 at 3.] During Mr. Bellamy's initial intake to the jail, LPN Jennifer Deese, a nurse with CCS, completed a "Receiving Screening Form" regarding Mr. Bellamy. [Filing No. 36 at 4.] Ms. Deese recorded that Mr. Bellamy used heroin and Xanax on the day of his arrest and that he had a history of withdrawal after stopping usage of those drugs. [Filing No. 36 at 4.] On the portion of the form entitled "Suicide Potential Screening," Ms. Deese answered "no" as to whether Mr. Bellamy was under the influence of drugs and "no" as to whether he was showing signs of withdrawal or mental illness. [Filing No. 36 at 5.] On that same day, Ms. Deese completed a "Withdrawal Score Sheet" as to Mr. Bellamy, on which she indicated that Mr. Bellamy was experiencing nausea/vomiting, tremors, anxiety, and headaches. [Filing No. 36 at 5.]

On or about September 26, 2016, Mr. Bellamy was recorded as having withdrawal symptoms more severe than those on September 24. [Filing No. 36 at 5.] At approximately 3:18 p.m., a blanket was placed over the window of Mr. Bellamy's cell, which was obvious to any individual who walked near his cell. [Filing No. 36 at 5.] Deputy Westmoreland, who was responsible for checking on inmates in Mr. Bellamy's unit that evening, conducted at least two checks of Mr. Bellamy's unit after the blanket had been affixed. [Filing No. 36 at 5.] Deputy Westmoreland did not remove the blanket or check on Mr. Bellamy. [Filing No. 36 at 5.] Later that evening, other inmates opened the door to Mr. Bellamy's cell. [Filing No. 36 at 5.] They found Mr. Bellamy with one end of a bed sheet tied around his neck, and the other end tied around a bunk bed. [Filing No. 36 at 5.] The inmates called for emergency assistance. [Filing No. 36 at 5.]

Over the span of the next five minutes, four deputies looked inside or entered Mr. Bellamy's cell but did not attempt to render any aid. [Filing No. 36 at 5-7.] At approximately 4:07 p.m., Deputies Klakamp, Mottram, and Buchanan entered the cell and began to remove the sheet from Mr. Bellamy's neck. [Filing No. 36 at 7.] One officer told Deputy Klakamp not to remove the sheet from Mr. Bellamy's neck, because it "was a crime scene." [Filing No. 36 at 7.] Deputy Klakamp nonetheless removed the sheet from Mr. Bellamy's neck and maintained Mr. Bellamy's airway while Deputy Mottram performed CPR. [Filing No. 36 at 7.] At approximately 4:09 p.m., medical staff arrived, and a nurse began to perform CPR. [Filing No. 36 at 7.] According to Deputy Klakamp, the nurse's performance of CPR was "very poor." [Filing No. 36 at 7.] Mr. Bellamy was pronounced dead at 4:44 p.m.

An internal affairs investigation was conducted following Mr. Bellamy's death. [Filing No. 36 at 8.] During that investigation, Deputy Westmoreland indicated that the situation had been

overwhelming. [Filing No. 36 at 8.] The investigation determined that Deputy Westmoreland violated Marion County Sheriff's Officer Rule 253.20 (Performance of Duty – Efficiency). [Filing No. 36 at 8.]

Mr. Bellamy filed his First Amended Complaint here, raising ten claims against various defendants. Presently pending before the Court is defendant CCS's Motion for Judgment on the Pleadings. [Filing No. 49.] That Motion is now fully briefed and ripe for this Court's consideration.

## III.
### DISCUSSION

CCS argues that it is entitled to judgment on the pleadings because Ms. Vale-Gugliuzzi has failed to adequately allege, as required by the *Monell* standard applying to Section 1983 municipal liability cases, that CCS engaged in a policy, practice, or procedure that resulted in a constitutional violation. [Filing No. 50 at 3]; *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). CCS argues generally that Ms. Vale-Gugliuzzi's First Amended Complaint contains only "boilerplate legal conclusions" without adequate supporting factual allegations. [Filing No. 50 at 4.] Ms. Vale-Gugliuzzi responds that she sufficiently pleads the required elements of a *Monell* claim against CCS, pointing to specific factual allegations in her First Amended Complaint. [Filing No. 52 at 4.] In reply, CCS reiterates its argument. [Filing No. 53.]

The Court begins by clarifying the claims at issue in this Motion. Ms. Vale-Gugliuzzi raises two *Monell* claims in her First Amended Complaint (Counts I and II), and in the claim headings, she identifies the defendants to whom those claims apply. [Filing No. 36 at 8-10.] CCS is not listed as a defendant in either of those headings, but the claims both include allegations specific to CCS. [Filing No. 36 at 8-10.] Ms. Vale-Gugliuzzi states in her briefing that both Counts I and II are indeed raised against CCS. [Filing No. 52 at 4.] Therefore, although CCS is

not specifically identified in the headings, the Court construes the First Amended Complaint as raising Counts I and II against CCS. Ms. Vale-Gugliuzzi also raises Count V against CCS, but that claim is not based upon a *Monell* theory of liability. [Filing No. 36 at 12.] Therefore, because CCS raises only a *Monell*-based argument in support of its Motion for Judgment on the Pleadings, the Court construes the Motion as only applying to Counts I and II, and not claim V.

Turning to CCS's substantive argument, it contends that Ms. Vale-Gugliuzzi's allegations are sufficient to establish that one CCS employee may have failed to accurately document Mr. Bellamy's symptoms, but they do not establish a basis for *Monell* liability. [Filing No. 50 at 5.] CCS contends that *Strauss v. City of Chicago,* 760 F.2d 765, 768 (7th Cir. 1985), is analogous to the circumstances present here. [Filing No. 50 at 6.] In *Strauss*, the plaintiff alleged that he suffered an unlawful arrest and a battery by a Chicago police officer. *Strauss*, 760 F.2d at 766. The plaintiff raised a *Monell* claim against the City, arguing that the police department maintained customs and practices that allowed such violations to occur. *Id.* The Seventh Circuit explained that, aside from the facts of the plaintiff's arrest bodily injury, the only evidence the plaintiff provided as to a possible policy or practice were statistical summaries regarding complaints filed with the police department. *Id.* at 768-69. Those summaries, the court concluded, were too generalized to provide any relevant information. *Id.* ("…the number of complaints filed, without more, indicates nothing. People may file a complaint for many reasons, or for no reason at all. That they filed complaints does not indicate that the policies that Strauss alleges exist do in fact exist and did contribute to his injury."). CCS contends that, as in *Strauss*, the First Amended Complaint "fails to allege any well-pled facts of an occurrence or policy other than incidents involving the plaintiff and statistical data." [Filing No. 50 at 6.]

The Court does not find the *Strauss* case to be analogous. As in *Strauss*, the First Amended Complaint contains allegations regarding Mr. Bellamy's specific circumstances: that while Mr. Bellamy showed continuous signs of detoxification and withdrawal, a CCS employee on a suicide potential screening form indicated that Mr. Bellamy showed no signs of withdrawal or mental illness. This was done despite the employee recording that Mr. Bellamy had used heroin and Xanax on the day of his arrest and as having a history of withdrawal after stopping usage of those drugs. But rather than pointing to general "statistical data," the First Amended Complaint also includes allegations regarding specific conditions existing in the period immediately preceding the incident at issue. The Complaint alleges that at least four individuals committed suicide while under the care and control of the Marion County Sheriff's Department, and that CCS provides medical care and treatment to the Sheriff's Department's inmates. And it alleges that in 2016, a task force issued recommendations for several procedural changes to reduce the risk of jail suicides.

There are three ways in which a municipality can be held liable under § 1983: "(1) an express policy that would cause a constitutional deprivation if enforced; (2) a common practice that is so widespread and well settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *League of Women Voters,* 757 F.3d at 727 (citing *Estate of Sims ex rel. Sims v. Cnty. of Bureau,* 506 F.3d 509, 515 (7th Cir.2007)). The facts as alleged by Ms. Vale-Gugliuzzi could establish a policy, a policy omission, or a custom of ignoring suicidal symptoms. *See Glisson v. Indiana Dept. of Corrs.*, 849 F.3d 372 (7th Cir. 2017) (finding that a policy of omission could constitute deliberate indifference under *Monell*).

As the Court described above, Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson*, 551 U.S. at 93 (quoting Fed. R. Civ. Pro. 8(a)(2)). "Specific facts are not necessary, the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555). And as the Seventh Circuit has made clear, this Court may not apply "a heightened pleading standard—more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure—in civil rights case alleging municipal liability under … 42 U.S.C. § 1983." *White v. City of Chicago*, 829 F.3d 837, 843-44 (7th Cir. [ ]), *cert. denied sub nom. White v. City of Chicago, Ill.*, 137 S. Ct. 526, 196 L. Ed. 2d 408 (2016). Even *Strauss*, the case relied upon by CCS, emphasizes that a defendant in a claim of this nature must meet a high standard to merit dismissal. That court reiterated that "[d]ismissal is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief … and mere vagueness or lack of detail does not constitute sufficient grounds for a motion to dismiss." *Id.* at 767.

While the First Amended Complaint does not plead the precise parameters of any policy or custom, or CCS's precise role in them, it satisfies the "short and plain statement" requirement imposed by Rule 8(a). The allegations are also sufficient to allow a reasonable inference that CCS maintained a policy, custom, or practice that deprived Mr. Bellamy of his constitutional rights. *See White*, 829 F.3d at 843 (finding plaintiff's *Monell* allegations sufficient to meet the standard articulated in Rule 8(a)). Therefore, CCS has not met the high standard to merit dismissal of Ms. Vale-Gugliuzzi's claim.

# IV.
## CONCLUSION

In a case alleging municipal liability under 42 U.S.C. § 1983, this Court applies the pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure—not a more stringent standard. For the reasons described above, the Court **DENIES** defendant CCS's Motion for Judgment on the Pleadings [49].

Date: 7/13/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**